**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>STAR MUSIC, INC. d/b/a STAR MUSIC & THE SINGING EXPRESS, a Minnesota Corporation, TRACY BROCK d/b/a STAR MUSIC, a Minnesota individual, RICH MANAGEMENT, INC. d/b/a BOGART'S/APPLE PLACE BOWL, a Minnesota Corporation, and FONG'S, INC. d/b/a DAVID FONG'S RESTAURANT, a Minnesota Corporation,<br><br>      Defendants. | Civil Action No.:  0:16-cv-04078<br><br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT** |

The Plaintiff, Phoenix Entertainment Partners, LLC, (hereinafter, "PEP" will be used to refer to both Phoenix Entertainment Partners, LLC, and its predecessor Slep-Tone Entertainment Corporation), by its undersigned counsel, hereby complains of Defendant Star Music, Inc. d/b/a/ Star Music & The Singing Express (hereinafter, "Star Music"), Defendant Tracy Brock d/b/a Star Music (hereinafter "Brock"), Defendant Rich Management, Inc. d/b/a Bogart's/Apple Place Bowl (hereinafter "Rich"), and Defendant  Fong's, Inc. d/b/a David Fong's Restaurant (hereinafter, "Fong's") and for its Complaint hereby alleges as follows:

<u>**SUMMARY**</u>

1.      Briefly stated, Defendants Star Music and Brock have infringed PEP's federally registered Sound Choice trademarks and service marks, have infringed PEP's distinctive and protectable trade dress, and have committed acts of unfair competition involving the false

designation of the origin of goods and services—and violated related state laws—by making or acquiring unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress, and by using those unauthorized goods and displaying the SOUND CHOICE® trademarks and service marks and the trade dress in connection with their commercial karaoke entertainment business.

2.    Briefly stated, Defendant Rich has infringed PEP's federally registered SOUND CHOICE® trademarks and service marks, through Star Music and Brock, has infringed PEP's distinctive and protectable trade dress, through Star Music and Brock, and has committed acts of unfair competition involving the false designation of the origin of goods and services—and violated related state laws—by permitting Star Music and Brock to display unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress in connection with Star Music's and Brock's commercial karaoke entertainment business.

3.    Briefly stated, Defendant Fong's has infringed PEP's federally registered SOUND CHOICE® trademarks and service marks, through Star Music and Brock, has infringed PEP's distinctive and protectable trade dress, through Star Music and Brock, and has committed acts of unfair competition involving the false designation of the origin of goods and services—and violated related state laws—by permitting Star Music and Brock to display unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress in connection with Star Music's and Brock's commercial karaoke entertainment business.

## JURISDICTION AND VENUE

4.      This action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114 and 1125.  This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

5.      This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to PEP's common law unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

6.      This Court has supplemental jurisdiction over the subject matter of PEP's state law claims pursuant to 28 U.S.C. § 1367(a), in that these claims are so related to PEP's federal claims that they form part of the same case or controversy.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendant Star Music is incorporated in the State of Minnesota and transacts business in the State of Minnesota and the federal judicial district for the District of Minnesota, Defendant Brock resides in the State of Minnesota and the federal judicial district for the District of Minnesota, Defendant Rich transacts business in the State of Minnesota and the federal judicial district for the District of Minnesota, and Defendant Fong's transacts business in the State of Minnesota and the federal judicial district for the District of Minnesota.

8.      This Court has personal jurisdiction over each Defendant, in that Defendant Star Music conducts significant business in this State and federal judicial district, Defendant Brock resides in this State and federal judicial district, and all Defendants conduct significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and federal judicial district.

## THE PARTIES

9.      Plaintiff PEP is a North Carolina LLC having its principal place of business in Pineville, North Carolina.

10.     Defendant Star Music is a Minnesota Corporation having an address in Burnsville, Minnesota, that has provided karaoke entertainment to various venues in Minnesota. Defendant Star Music has been hired by Rich to provide karaoke entertainment to Rich's customers at Bogart's/Apple Place Bowl in Apple Valley, Minnesota. Defendant Star Music has been hired by Fong's to provide karaoke entertainment to Fong's customers at David Fong's Restaurant in Bloomington, Minnesota.

11.     Upon information and belief, Defendant Brock is a Minnesota individual having an address in Burnsville, Minnesota, that has provided karaoke entertainment to various venues in Minnesota. Defendant Brock has been hired by Rich to provide and has personally provided karaoke entertainment to Rich's customers at Bogart's/Apple Place Bowl in Apple Valley, Minnesota. Defendant Brock has been hired by Fong's to provide and has personally provided karaoke entertainment to Fong's customers at David Fong's Restaurant in Bloomington, Minnesota.

12.     Defendant Rich is a Minnesota Corporation that operates a restaurant called Bogart's/Apple Place Bowl in Apple Valley, Minnesota. Rich operates a commercial establishment that provides karaoke entertainment to its patrons as an inducement for their patronage and purchase of food, drink, and other concessions.

13.     Defendant Fong's is a Minnesota Corporation that operates a restaurant called David Fong's Restaurant in Bloomington, Minnesota. Fong's operates a commercial

establishment that provides karaoke entertainment to its patrons as an inducement for their patronage and purchase of food, drink, and other concessions.

## BACKGROUND FACTS

14. PEP is the owner, by assignment from Slep-Tone Entertainment Corporation ("Slep-Tone"), of federally registered Sound Choice trademarks and service marks, and distinctive and protectable trade dress, together making up the Sound Choice brand.

15. PEP produces and distributes karaoke accompaniment tracks under the Sound Choice brand.

16. Over the course of nearly three decades in business, PEP invested more than $20 million to re-record and replicate the authentic sound of approximately 16,500 popular songs across different eras and genres of music.

17. Sound Choice-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers. According to some estimates, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

18. The popularity of Sound Choice-branded karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

19. Sound Choice-branded karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

20. Throughout its history, PEP released its products for commercial use exclusively on physical media—initially, cassette tapes, and then compact discs beginning in approximately 1994.

21. As such, in the marketplace for commercial karaoke tracks, authentic Sound Choice karaoke tracks exist only on compact discs. The number of Sound Choice cassette tapes still in occasional commercial use is likely trivial if not zero, as that technology is considered "dead."

22. Unauthorized Sound Choice-branded karaoke tracks are widely available from numerous sources, such as through illicit downloads and file-sharing sites and through preloaded hard drives often sold through online marketplaces such as craigslist.org.

23. Unauthorized Sound Choice-branded karaoke tracks are relatively easy to make, even to novice users, with computer technology that is readily accessible, using original and authentic Sound Choice-branded karaoke tracks as templates.

24. These unauthorized tracks are easily stored on hard drives, USB drives, and similar media, and are thus easily duplicated to other media, making as many duplicates as wanted.

25. The making of these unauthorized tracks is undertaken without PEP's ability to monitor or control the process or to control the quality of the resulting product.

26. The unauthorized copying process requires certain format changes that degrade the quality of the unauthorized product in comparison to the original.

27. This degradation manifests in a reduction in sound and graphics quality—a reduction that is antithetical to the reputation of Sound Choice-branded products as being of the

highest quality—although in a noisy environment, these changes may or may not be immediately obvious to a casual consumer.

28.     Nevertheless, these inferior unauthorized copies are marked with PEP's Sound Choice brand, including counterfeits of PEP's federally registered Sound Choice trademarks and service marks and the unauthorized use of PEP's distinctive and protectable trade dress.

29.     These free or low-cost unauthorized copies are then used to provide commercial karaoke services without any compensation to or control by PEP.

30.     Instead, these activities have driven the demand for original discs down to uneconomically feasible levels, because it has become relatively easy to illicitly obtain, for free or at a nominal cost, products that if legitimate would cost tens of thousands of dollars when purchased at retail.

31.     Since approximately 2007, PEP has offered karaoke operators who want the convenience of operating from computer hard drives instead of original discs the opportunity to obtain permission to do so with PEP's ability to audit and control the activity, under very specific parameters that require the operator to own one original media that corresponds to every duplicate made.

## THE RIGHTS OF THE PLAINTIFF

32.     Plaintiff PEP is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and renewed once, for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

33.     Plaintiff PEP is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows."

34.     Plaintiff PEP is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and renewed once, for a display trademark (SOUND CHOICE and design) as follows:



for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

35.     Plaintiff PEP is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark (SOUND CHOICE and design) as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows."

36.     For the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, PEP has provided the public, including Star Music, Brock, Rich, and Fong's, with notice of those federal registrations through the consistent display of the symbol ® with its marks as used.

37.     For the entire time the Sound Choice marks have been federally registered, PEP has affixed U.S. Trademark Registration No. 1,923,448 and U.S. Trademark Registration No. 2,000,725 to the goods including "pre-recorded magnetic audio cassette tapes and compact discs

containing musical compositions and compact discs containing video related to musical compositions" that are sold or licensed by PEP.

38.     For the entire time the Sound Choice marks have been federally registered, PEP has licensed the use of U.S. Service Mark Registration No. 4,099,045 and U.S. Service Mark Registration No. 4,099,052 to licensees for the service of "conducting entertainment exhibitions in the nature of karaoke shows," in accordance with 15 U.S.C. § 1055.

39.     Principally, the Sound Choice Marks are indicators of PEP as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by PEP or at its direction and under its control.

40.     PEP is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress"). This distinctive and protectable trade dress includes, at a minimum, (a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

41.     PEP has used its trade dress continuously and substantially exclusively for a period of decades.

42.     The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of PEP as a source, effectively functioning as a visual trademark.

43.     The aforementioned trade dress serves to distinguish PEP's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by Star Music and Brock are capable of identifying a particular karaoke track as originating with PEP simply by examining the Trade

Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

44.     The elements of the Trade Dress represent specific design choices by PEP.  There are many other ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

45.     No competitor of PEP is required to use any element of the Trade Dress to accomplish the lyric cueing, and indeed all of the Plaintiff's known competitors are known to use other trade dress in accomplishing the lyric cueing.

**ACTIVITIES OF DEFENDANTS STAR MUSIC AND BROCK**

46.     Defendants Star Music and Brock provide karaoke services to various venues in Minnesota, principally concentrated in the Minneapolis and St. Paul, MN area, including Bogart's/Apple Place Bowl operated by Defendant Rich Management, Inc. and David Fong's Restaurant operated by Defendant Fong's, Inc.

47.     In order to supply karaoke accompaniment tracks to a venue, Defendants Star Music and Brock transport the karaoke accompaniment tracks to the venue.

48.     In order to obtain the infringing karaoke tracks or to supply them to a venue, the infringing karaoke tracks are transported in commerce, using computer networks and/or public roadways.

49.     On information and belief, in order to provide services, rather than using original karaoke discs that Star Music and Brock possess (if Star Music and Brock indeed possess such discs), Star Music and Brock rely upon one or more computer hard drives that are substantially identical in content that store files representing karaoke accompaniment tracks.

50.     On information and belief, Star Music and Brock created, or directed another to create, or otherwise acquired from a third party the files that are stored on their computer hard drives.

51.     On information and belief, Star Music and Brock do not have an original karaoke disc to correspond to each Sound Choice-branded karaoke track on each of their karaoke systems.

52.     PEP did not authorize, cause, control, or know about the creation of the files stored on Star Music's and Brock's computer hard drives at the time those files were so stored.

53.     On information and belief, many of the files stored on the Star Music's and Brock's computer hard drives are unauthorized copies of PEP karaoke tracks that are marked with counterfeits of the Sound Choice Marks and the Trade Dress.

54.     When played using necessary software, those files cause the counterfeit Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

55.     PEP did not authorize Star Music or Brock to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

56.     As such, the placement of the Sound Choice Marks and the Trade Dress upon Star Music's and Brock's computer files is a false designation of the origin of those computer files.

57.     At all times relevant to the causes of action stated herein, Star Music and Brock have known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

58.     Star Music's and Brock's files, which function as karaoke accompaniment tracks, are unauthorized copies of genuine Sound Choice-branded tracks, and specifically include counterfeits of the Sound Choice marks that are affixed to and displayed in conjunction with the unauthorized Sound Choice-branded tracks.

59.     A patron or unwitting customer of Star Music and Brock, when confronted with the display of the counterfeit Sound Choice Marks and the Trade Dress at one of their shows, is likely to be confused into believing, falsely, that PEP created the unauthorized tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the unauthorized tracks as that term is used in the Trademark Act.

60.     A patron or unwitting customer of Star Music and Brock, when confronted with the display of the counterfeit Sound Choice Marks and the Trade Dress at one of their shows, is also likely to be confused into believing, falsely, that PEP sponsored or approved Star Music's and Brock's services and commercial activities by licensing use of the Sound Choice Marks and the Trade Dress by Star Music and Brock.

61.     Star Music's and Brock's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because Star Music and Brock are paid to provide access to and play those computer files and tracks at karaoke shows.

62.     Additionally, even if a particular unauthorized track is not played at a given show, the act of making that unauthorized track available for play at a show is a commercial act for which Star Music and Brock are compensated and which inure to their benefit.

63.     On information and belief, Star Music's and Brock's use of unauthorized accompaniment tracks is not limited to PEP's tracks, but extends to the use of unauthorized copies of numerous other manufacturers' tracks as well, on the same terms as above.

64.     On information and belief, the counterfeit Sound Choice Marks and the Trade Dress were displayed on video monitors during various songs played by Star Music and Brock.

## ACTIVITIES OF DEFENDANT RICH

65.     Rich hired Star Music and Brock to provide commercial karaoke services at its restaurant.

66.     Rich has the right and ability to control whether its contractors use authentic or unauthorized materials to provide services.

67.     PEP informed Rich of the infringing and counterfeit character of Rich's contractor's karaoke accompaniment tracks. *See* Exhibit A.

68.     PEP offered Rich the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protects venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contractors are operating legally. *See id.*

69.     PEP also provides a certification program and a licensing program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials.

70.     As a result of PEP's efforts, Rich has actual knowledge of the infringing and counterfeit nature of Star Music's and Brock's karaoke materials.

71.     Despite that knowledge, Rich refused to terminate Star Music's and Brock's services.

72.     Despite that knowledge, Rich continued to receive a financial benefit from the provision of infringing karaoke services at its establishment by Star Music and Brock, through the attraction of paying patrons to its establishment.

73.     As such, Rich operated in actual or apparent partnership with Star Music and Brock, in a symbiotic relationship from which all benefit.

74.     Rich is liable for the acts of trademark infringement, trade dress infringement, and unfair competition directly engaged in by Star Music and Brock on its respective premises or for its benefit.

## ACTIVITIES OF DEFENDANT FONG'S

75.     Fong's hired Star Music and Brock to provide commercial karaoke services at its restaurant.

76.     Fong's has the right and ability to control whether its contractors use authentic or unauthorized materials to provide services.

77.     PEP informed Fong's of the infringing and counterfeit character of Fong's contractor's karaoke accompaniment tracks. *See* Exhibit B.

78.     PEP offered Fong's the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protects venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contractors are operating legally. *See id.*

79.     PEP also provides a certification program and a licensing program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials.

80.     As a result of PEP's efforts, Fong's has actual knowledge of the infringing and counterfeit nature of Star Music's and Brock's karaoke materials.

81.     Despite that knowledge, Fong's refused to terminate Star Music's and Brock's services.

82.     Despite that knowledge, Fong's continued to receive a financial benefit from the provision of infringing karaoke services at its establishment by Star Music and Brock, through the attraction of paying patrons to its establishment.

83.     As such, Fong's operated in actual or apparent partnership with Star Music and Brock, in a symbiotic relationship from which all benefit.

84.     Fong's is liable for the acts of trademark infringement, trade dress infringement, and unfair competition directly engaged in by Star Music and Brock on its respective premises or for its benefit.

## DAMAGES

85.     Star Music's, Brock's, Rich's, and Fong's unauthorized use of PEP's Sound Choice Marks has damaged PEP.

86.     Star Music, Brock's, Rich, and Fong's have damaged PEP in an amount to be proven at trial but not less than $25,000 for each karaoke system Star Music and Brock own or operate and which contains unauthorized karaoke tracks that infringe the Sound Choice Marks and Trade Dress as detailed above, based upon Star Music's and Brock's foregoing purchase of authentic original media.

87.     Star Music and Brock have also enjoyed years of revenues attributable in substantial part to their use of unauthorized Sound Choice-branded karaoke tracks to provide karaoke services for money.

88.     Star Music's and Brock's illicit activities have also allowed them to compete unfairly against PEP's legitimate customers by lowering the cost of doing business through piracy of the music materials they use.

89.     Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which Star Music and Brock operate by helping to crowd higher-cost but legitimate operators out of the market.

90.     Star Music's, Brock's, Rich's, and Fong's acts deprived PEP of revenue by discouraging legitimate operators from investing in legitimate Sound Choice-branded products.

91.     Star Music's, Brock's, Rich's, and Fong's unauthorized use of and benefit from the use of the Sound Choice Marks has damaged PEP both in the aggregate and individually.

92.     Star Music, Brock, Rich, and Fong's have damaged PEP in an amount of at least $100,000.

93.     Moreover, by exerting illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the use of unauthorized material belonging to PEP and to other manufacturers, Star Music, Brock, Rich, and Fong's have cost PEP in excess of $100,000 in revenue from legitimate sources crowded out of the market by the Defendants' unauthorized acts.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114**
**AGAINST STAR MUSIC AND BROCK**

94.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-93 of this Complaint.

95.     Star Music and Brock used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

96. Star Music's and Brock's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

97. PEP did not license Star Music and Brock to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at Star Music's and Brock's venue(s).

98. Use of the Sound Choice Marks by Star Music and Brock is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which Star Music and Brock perform into believing that the services those customers are receiving are being provided with the authorization of the PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

99. Star Music's and Brock's acts were willful and knowing.

100. PEP has been damaged by Star Music's and Brock's infringing activities.

101. Unless enjoined by the Court, Star Music's and Brock's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

### SECOND CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114
### AGAINST RICH

102. PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-101 of this Complaint.

103. Rich knowingly directly benefited from the use of, and through Star Music and Brock, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

104.     Rich's use, through Star Music and Brock, of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

105.     PEP did not license Rich to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

106.     Use of the Sound Choice Marks in the manner attributable to Rich is likely to cause confusion, or to cause mistake, or to deceive Rich's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

107.      Rich's acts were willful and knowing.

108.     PEP has been damaged by infringing activities of Rich.

109.     Unless enjoined by the Court, Rich's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

## THIRD CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114
## AGAINST FONG'S

110.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-109 of this Complaint.

111.     Fong's knowingly directly benefited from the use of, and through Star Music and Brock, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

112.    Fong's use, through Star Music and Brock, of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

113.    PEP did not license Fong's to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

114.    Use of the Sound Choice Marks in the manner attributable to Fong's is likely to cause confusion, or to cause mistake, or to deceive Fong's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

115.     Fong's acts were willful and knowing.

116.    PEP has been damaged by infringing activities of Fong's.

117.    Unless enjoined by the Court, Fong's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**FOURTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a)**
**AGAINST STAR MUSIC AND BROCK**

118.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-117 of this Complaint.

119.    On each occasion when Star Music and Brock caused or permitted a Sound Choice-branded accompaniment track to be played during a karaoke show, Star Music and Brock caused or permitted the display of the Sound Choice Marks in connection with its karaoke entertainment services.

120.    The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be

deceived into believing, falsely, that PEP created the tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the tracks as that term is used in the Trademark Act.

121.    The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Star Music's and Brock's services and commercial activities by licensing the Sound Choice Marks to Star Music and Brock.

122.    The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services.

123.    Star Music's and Brock's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

124.    Because PEP has been denied this revenue, it has been damaged by Star Music's and Brock's uses.

125.    Unless enjoined by the Court, Star Music's and Brock's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**FIFTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a)**
**AGAINST RICH**

126.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-125 of this Complaint.

127.    On each occasion when Rich permitted a Sound Choice-branded accompaniment track to be played during a karaoke show, Rich permitted the display of the Sound Choice Marks in connection with Star Music's and Brock's karaoke entertainment services.

128.    The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Rich's services and commercial activities.

129.    The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Rich's services and commercial activities by licensing the Sound Choice Marks to Star Music and Brock.

130.    The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services in Rich's venue.

131.    Star Music's and Brock's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

132.    Because PEP has been denied this revenue, it has been damaged by Rich's uses.

133.    Unless enjoined by the Court, Rich's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

## SIXTH CLAIM FOR RELIEF
## UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a)

**AGAINST FONG'S**

134.   PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-133 of this Complaint.

135.   On each occasion when Fong's permitted a Sound Choice-branded accompaniment track to be played during a karaoke show, Fong's permitted the display of the Sound Choice Marks in connection with Star Music's and Brock's karaoke entertainment services.

136.   The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Fong's services and commercial activities.

137.   The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Fong's services and commercial activities by licensing the Sound Choice Marks to Star Music and Brock.

138.   The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services in Fong's venue.

139.   Star Music's and Brock's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

140.   Because PEP has been denied this revenue, it has been damaged by Fong's uses.

141.   Unless enjoined by the Court, Fong's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**SEVENTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a)**
**AGAINST STAR MUSIC AND BROCK**

142.   PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-141 of this Complaint.

143.   On each occasion when Star Music and Brock caused or permitted an unauthorized Sound Choice-branded accompaniment track to be played during a karaoke show, Star Music and Brock caused or permitted the display of the Trade Dress in connection with its karaoke entertainment services.

144.   The display of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP created the tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the tracks as that term is used in the Trademark Act.

145.   The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Star Music's and Brock's services and commercial activities by licensing the Sound Choice Marks and the Trade Dress to Star Music and Brock.

146.   The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be

deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services.

147.    Star Music's and Brock's use of the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

148.    Because PEP has been denied this revenue, it has been damaged by Star Music's and Brock's uses.

149.    Unless enjoined by the Court, Star Music's and Brock's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**EIGHTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a)**
**AGAINST RICH**

150.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-149 of this Complaint.

151.    On each occasion when Rich permitted a Sound Choice-branded accompaniment track to be played during a karaoke show, Rich permitted the display of the Trade Dress in connection with Star Music's and Brock's karaoke entertainment services.

152.    The display of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Rich's services and commercial activities.

153.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be

deceived into believing, falsely, that PEP sponsored or approved Rich's services and commercial activities by licensing the Trade Dress to Star Music and Brock.

154.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services in Rich's venue.

155.    Star Music's and Brock's use of the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

156.    Because PEP has been denied this revenue, it has been damaged by Rich's uses.

157.    Unless enjoined by the Court, Rich's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

## NINTH CLAIM FOR RELIEF
## UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a) AGAINST FONG'S

158.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-157 of this Complaint.

159.    On each occasion when Fong's permitted a Sound Choice-branded accompaniment track to be played during a karaoke show, Fong's permitted the display of the Trade Dress in connection with Star Music's and Brock's karaoke entertainment services.

160.    The display of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Fong's services and commercial activities.

161.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Fong's services and commercial activities by licensing the Trade Dress to Star Music and Brock.

162.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased by Star Music and Brock for use in providing karaoke entertainment services in Fong's venue.

163.    Star Music's and Brock's use of the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Star Music and Brock had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

164.    Because PEP has been denied this revenue, it has been damaged by Fong's uses.

165.    Unless enjoined by the Court, Fong's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**TENTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**
**AGAINST STAR MUSIC AND BROCK**

166.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-165 of this Complaint

167.    On each occasion when Star Music and Brock displayed an unauthorized accompaniment track from a manufacturer other than PEP during a karaoke show, Star Music and Brock caused the display of the words, names, and symbols of the other manufacturer in connection with its karaoke services.

168.    Upon information and belief, Star Music's and Brock's use of those words, names, and symbols falsely designates the other manufacturer as the origin of the unauthorized track, or deceives those present during the display of the words, names, and symbols into believing, falsely, that the other manufacturer sponsored or approved Star Music's and Brock's services and commercial activities, when in fact Star Music and Brock or an upstream but unauthorized provider of the track was the origin of that track and Star Music and Brock was not authorized to use the words, names, and symbols.

169.    The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the unauthorized tracks are legitimate, authorized, and authentic materials that Star Music and Brock acquired in a legitimate manner.  The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by those manufacturers and purchased by Star Music and Brock, or that the manufacturer sponsored or approved Star Music's and Brock's services and commercial activities.

170.    Star Music's and Brock's unauthorized use of the words, names, or symbols of other manufacturers in this fashion damages PEP by enabling Star Music and Brock to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately.

171.    PEP's legitimate customers cannot compete against Star Music and Brock and thus prevent PEP's legitimate customers from making purchases of material from PEP, resulting in a denial of revenue to PEP.

172.     Because PEP has been denied this revenue, it has been damaged by Star Music's and Brock's unauthorized use of the words, names, or symbols of other manufacturers.

173.     Unless enjoined by the Court, Star Music's and Brock's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

## ELEVENTH CLAIM FOR RELIEF
### MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### AGAINST STAR MUSIC AND BROCK

174.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-173 of this Complaint.

175.     Star Music and Brock used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

176.     Star Music's and Brock's acts of infringement occurred during the conduct of trade or commerce, from which it derived an economic benefit.

177.     Star Music's and Brock's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

178.     Star Music's and Brock's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

179.     As a direct and proximate result of Star Music's and Brock's acts of infringement PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the

contents of those discs, which revenue would have been received but for Star Music's and Brock's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

180.  As such, PEP has been damaged and is likely to be further damaged by a deceptive trade practice of Star Music and Brock within the meaning of Minn. Stat. § 325D.44.

181.  Unless enjoined by the Court, Star Music's and Brock's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

## TWELFTH CLAIM FOR RELIEF
## MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
## AGAINST RICH

182.  PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-181 of this Complaint.

183.  Rich hired Star Music and Brock to provide commercial karaoke services at its establishment, and it had the right and ability to control the use of unauthorized or counterfeit materials for said commercial purposes.

184.  Rich permitted Star Music and Brock to engage in acts of infringement of the Sound Choice Marks and the Trade Dress, in derogation of PEP's common law and statutory rights in those marks.

185.  Star Music's and Brock's acts of infringement occurred during the conduct of trade or commerce, from which Rich derived an economic benefit.

186.  Rich enabling Star Music's and Brock's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

187.  Rich enabling Star Music's and Brock's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

188.    As a direct and proximate result of Star Music's and Brock's acts of infringement and Rich's encouragement thereof, PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Star Music's and Brock's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

189.    As such, PEP has been damaged and is likely to be further damaged by a deceptive trade practice of Star Music and Brock, aided by Rich's encouragement, within the meaning of Minn. Stat. § 325D.44.

190.    Unless enjoined by the Court, Star Music's and Brock's unfair competition activities, aided by Rich's encouragement, as described above will continue unabated and will continue to cause harm to PEP.

**THIRTEENTH CLAIM FOR RELIEF**
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**AGAINST FONG'S**

191.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-190 of this Complaint.

192.    Fong's hired Star Music and Brock to provide commercial karaoke services at its establishment, and it had the right and ability to control the use of unauthorized or counterfeit materials for said commercial purposes.

193.    Fong's permitted Star Music and Brock to engage in acts of infringement of the Sound Choice Marks and the Trade Dress, in derogation of PEP's common law and statutory rights in those marks.

194.    Star Music's and Brock's acts of infringement occurred during the conduct of trade or commerce, from which Fong's derived an economic benefit.

195.    Fong's enabling Star Music's and Brock's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

196.    Fong's enabling Star Music's and Brock's acts of infringement causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

197.    As a direct and proximate result of Star Music's and Brock's acts of infringement and Fong's encouragement thereof, PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Star Music's and Brock's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

198.    As such, PEP has been damaged and is likely to be further damaged by a deceptive trade practice of Star Music and Brock, aided by Fong's encouragement, within the meaning of Minn. Stat. § 325D.44.

199.    Unless enjoined by the Court, Star Music's and Brock's unfair competition activities, aided by Fong's encouragement, as described above will continue unabated and will continue to cause harm to PEP.

## FOURTEENTH CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION
### AGAINST STAR MUSIC AND BROCK

200.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-199 of this Complaint.

201.    Star Music and Brock used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

202.    Star Music's and Brock's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Star Music and Brock and the business venues where it performs.

203.    PEP did not license Star Music or Brock to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks or the Trade Dress in connection with the services Star Music and Brock provide.

204.    Use of the Sound Choice Marks and the Trade Dress in the manner attributable to Star Music and Brock is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which Star Music and Brock perform into believing that the services those customers are receiving are being provided with the authorization of the PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

205.    Star Music's and Brock's acts were willful and knowing.

206.    PEP has been damaged by Star Music's and Brock's infringing activities.

207.    Unless enjoined by the Court, Star Music's and Brock's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**FIFTEENTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST RICH**

208.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-207 of this Complaint.

209.    Rich knowingly directly benefited from the use of, and through Star Music and Brock, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

210.    Rich's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Rich.

211.    PEP did not license Rich to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

212.    Use of the Sound Choice Marks in the manner attributable to Rich is likely to cause confusion, or to cause mistake, or to deceive Rich's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

213.    Rich's acts were willful and knowing.

214.    PEP has been damaged by Rich's infringing activities.

215.    Unless enjoined by the Court, Rich's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**SIXTEENTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST FONG'S**

216.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-215 of this Complaint.

217.    Fong's knowingly directly benefited from the use of, and through Star Music and Brock, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

218.    Fong's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Fong's.

219.    PEP did not license Fong's to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

220.    Use of the Sound Choice Marks in the manner attributable to Fong's is likely to cause confusion, or to cause mistake, or to deceive Fong's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

221.    Fong's acts were willful and knowing.

222.    PEP has been damaged by Fong's infringing activities.

223.    Unless enjoined by the Court, Fong's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PEP prays for judgment against the Defendants and that the Court:

A. Find that Star Music and Brock have committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

B. Find that Rich, through Star Music and Brock, has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

C. Find that Fong's, through Star Music and Brock, has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

D. Find that Star Music and Brock have engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Sound Choice marks;

E. Find that Rich, through Star Music and Brock, has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Sound Choice marks;

F. Find that Fong's, through Star Music and Brock, has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Sound Choice marks;

G. Find that Star Music and Brock have engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Trade Dress;

H.     Find that Rich, through Star Music and Brock, engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Trade Dress;

I.     Find that Fong's, through Star Music and Brock, engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of the Trade Dress;

J.     Find that Star Music and Brock have engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Star Music's and Brock's unauthorized use of other manufacturer's marks and trade dress.

K.     Find that Star Music and Brock have engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

L.     Find that Rich, through Star Music and Brock, has engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

M.     Find that Fong's, through Star Music and Brock, has engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

N.     Find that Star Music and Brock has engaged in unfair competition detrimental to PEP in violation of common law because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

O.      Find that Rich, through Star Music and Brock, engaged in unfair competition detrimental to PEP in violation of common law because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

P.      Find that Fong's, through Star Music and Brock, engaged in unfair competition detrimental to PEP in violation of common law because of Star Music's and Brock's unauthorized use of the Sound Choice marks and the Trade Dress;

Q.      Enter judgment against Star Music and Brock and in favor of PEP on all applicable counts;

R.      Enter judgment against Rich and in favor of PEP on all applicable counts;

S.      Enter judgment against Fong's and in favor of PEP on all applicable counts;

T.      Find that Star Music's and Brock's activities were in all respects conducted willfully and for profit;

U.      Find that Rich's activities were in all respects conducted willfully and for profit;

V.      Find that Fong's activities were in all respects conducted willfully and for profit;

W.      Award to PEP Star Music's and Brock's profits and the damages sustained by PEP because of Star Music's and Brock's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, and not less than $50,000 for each establishment in which the infringement occurred, in accordance with 15 U.S.C. § 1117;

X.      Award to PEP Rich's profits and the damages sustained by PEP because of Rich's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative,

statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, in accordance with 15 U.S.C. § 1117;

Y.      Award to PEP Fong's profits and the damages sustained by PEP because of Fong's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, in accordance with 15 U.S.C. § 1117;

Z.      Award to PEP Star Music's and Brock's profits and the damages sustained by PEP because of Star Music's and Brock's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, and not less than $50,000 for each establishment in which the infringement occurred, in accordance with 15 U.S.C. § 1117;

AA.     Award to PEP Rich's profits and the damages sustained by PEP because of Rich's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, in accordance with 15 U.S.C. § 1117;

BB.     Award to PEP Fong's profits and the damages sustained by PEP because of Rich's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Star Music and Brock, in accordance with 15 U.S.C. § 1117;

CC.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Star Music's and Brock's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

DD.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Rich's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

EE.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Fong's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

FF.     Order all computer discs, drives, or other media belonging to Star Music and Brock, which media contain counterfeits of PEP's marks or Trade Dress or of marks belonging to other manufacturers, to be delivered up for destruction, in accordance with 15 U.S.C. § 1116 and 15 U.S.C. § 1118;

GG.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade Dress by Star Music and Brock, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

HH.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade Dress by Rich, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

II.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade Dress by Fong's, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

JJ.     Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Star Music and Brock with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

KK.   Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Rich with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

LL.   Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Fong's with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

MM.   Award PEP its costs of suit and attorney fees, to the extent not awarded above, in accordance with 15 U.S.C. § 1117 and Minn. Stat. § 325D.45; and

NN.   Grant PEP such other and further relief as justice may require.

**Respectfully submitted,**

Dated:   12/2/2016            By:     s/Jessica M. A. Thomas
David R. Fairbairn (No. 28,125)
Jessica M. A. Thomas (No. 395,245)
Andrew R. Swanson (No. 396,736)
KINNEY & LANGE, P.A.
The Kinney & Lange Building
312 South Third Street
Minneapolis, MN  55415-1002
Email:      drfairbairn@kinney.com
            jthomas@kinney.com
            aswanson@kinney.com
Telephone:   (612) 339-1863
Facsimile:   (612) 339-6580

**ATTORNEYS FOR PLAINTIFF
PHOENIX ENTERTAINMENT
PARTNERS, LLC**