UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, | Case No. 16-CV-4078 (PJS/FLN) |
| Plaintiff, | |
| v. | |
| STAR MUSIC, INC., a Minnesota corporation d/b/a Star Music & The Singing Express; TRACY BROCK, a Minnesota individual d/b/a Star Music; RICH MANAGEMENT, INC., a Minnesota corporation d/b/a Bogart's/Apple Place Bowl; and FONG'S, INC., a Minnesota corporation d/b/a David Fong's Restaurant, | ORDER |
| Defendants. | |

---

David R. Fairbairn, Jessica M.A. Thomas, and Andrew R. Swanson, KINNEY & LANGE, P.A., for plaintiff.

Jonathan L.A. Phillips, SHAY PHILLIPS, LTD., for defendants Star Music, Inc. and Tracy Brock.

Michael S. Sherrill, SHERRILL LAW OFFICES, PLLC, for defendants Rich Management, Inc. and Fong's, Inc.

Defendants Tracy Brock and Star Music, Inc. ("Star") stage karaoke events at bars and other venues, including venues operated by defendants Rich Management, Inc. ("Rich") and Fong's, Inc. ("Fong"). Plaintiff Phoenix Entertainment Partners, LLC ("Phoenix") produces and distributes karaoke accompaniment tracks under the "Sound

Choice" brand.  Phoenix brings claims of trademark infringement, unfair competition, and deceptive trade practices under federal and state law arising from Star's and Brock's alleged use of Sound Choice-branded karaoke tracks at venues operated by Rich and Fong.

This matter is before the Court on defendants' motions to dismiss.  For the reasons that follow, the motions are granted with respect to Phoenix's federal claims, and those claims are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over Phoenix's state-law claims, and those claims are dismissed without prejudice.

I.  BACKGROUND

Phoenix produces and distributes karaoke tracks under the "Sound Choice" brand.[1]  Compl. ¶ 15.  Each track is a short video that plays background music and that displays lyrics and cues to the singer.  *See* Compl. ¶¶ 15, 19, 27, 40.  Phoenix alleges that Sound Choice-branded karaoke tracks are "wildly popular" because they are particularly faithful to the sound of the original recordings and because they provide highly accurate singing cues.  Compl. ¶¶ 17-19.

Phoenix owns two registered trademarks—one for SOUND CHOICE and the other for a graphic displaying a musical staff with the words "Sound Choice"

---

[1] As does the complaint, this order uses "Phoenix" to refer to both Phoenix and its predecessor, Slep-Tone Entertainment Corporation.  Compl. at 1.

superimposed in a stylized font. Compl. ¶¶ 32, 34. Phoenix also owns two registered service marks—again, one for SOUND CHOICE and the other for the Sound Choice graphic. Compl. ¶¶ 33, 35. Phoenix alleges that it is also the owner of distinct and protectable trade dress, including the use of a particular typeface, style, and visual arrangement in displaying lyrics, and the use of a series of vanishing rectangles to indicate entry cues for singers. Compl. ¶ 40.

Phoenix has released Sound Choice-branded karaoke tracks only on physical media—initially cassette tapes, and later compact discs. Compl. ¶ 20. Nonetheless, digital Sound Choice-branded karaoke tracks can be downloaded over the Internet or purchased on hard drives. Compl. ¶ 22. Phoenix alleges that the process required to enable the downloading of its tracks or their transfer onto hard drives involves certain format changes, and that these format changes degrade the quality of the tracks. Compl. ¶¶ 26-27. When these digital files are played, Phoenix contends, the Sound Choice marks and trade dress are displayed in connection with inferior sound and graphics, thus harming the brand. Compl. ¶ 54.

Phoenix alleges that Star and Brock use digital copies of Phoenix's Sound Choice-branded karaoke tracks in their karaoke shows. Although much of Phoenix's complaint reads as though the mere existence of these digital copies is unlawful, Phoenix does not claim that it owns the copyright to the karaoke tracks. Instead, Phoenix claims that the

display of its marks and trade dress during karaoke performances violates its trademark rights and constitutes deceptive trade practices and unfair competition.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Star and Brock

Phoenix brings claims of trademark infringement, false designation of origin, and unfair competition against Star and Brock under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). All of these claims require a showing of a likelihood of confusion. *See Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 887 (8th Cir. 2014). Phoenix alleges two distinct types of confusion: (1) confusion as to the origin, sponsorship, or approval of goods (the goods being the digital karaoke files),

and (2) confusion as to the origin, sponsorship, or approval of services (the services being the karaoke services provided by Star and Brock).

1. Digital Files

Although Phoenix is the source of the creative content embodied in the digital karaoke files, Phoenix contends that it is not the source of the digital files themselves. Instead, Phoenix argues, those files are a distinct (and inferior) good created by whomever copied the karaoke tracks onto hard drives. Phoenix contends that, by playing the unauthorized digital files that display the Sound Choice marks and Phoenix's trade dress, Star and Brock create the false impression that Phoenix is the creator (or authorized the creation) of the digital files on the hard drives. *See* Compl. ¶ 59.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Supreme Court held that § 1125(a) does not provide a cause of action for the unaccredited copying of creative works. This is so, the Supreme Court explained, because the phrase "origin of goods" in § 1125(a) is most naturally read to refer only to the origin of the physical, tangible embodiment of the creative content (such as a book or compact disc or videotape) and not to the origin of the creative content itself (such as the story or song or movie). *Id.* at 31-32. To read the phrase otherwise, the Court found,

would unduly expand trademark law to prohibit the copying of creative works on which the copyright has expired. *Id.* at 33-35.

In a number of other lawsuits involving Phoenix, federal courts have applied *Dastar* to find that Phoenix cannot show a likelihood of confusion as to the origin of the digital files embodying the karaoke tracks. *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249-50 (9th Cir. 2017) (per curiam); *Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817, 828-29 (7th Cir. 2016); *Phoenix Entm't Partners LLC v. Boyte*, No. 16-2911, 2017 WL 1153969, at *5-6 (S.D. Tex. Mar. 28, 2017).

In these courts' view, there can be no likelihood of confusion concerning the source of the relevant good—that is, the digital file—because the display of Phoenix's marks and trade dress in the karaoke video does not indicate anything about the source of the *physical medium* in which that content is stored. Instead, these courts reason, the marks and trade dress are only understood to indicate—accurately—that Phoenix is the source of the *creative content* embodied in that physical medium. *See Rumsey*, 829 F.3d at 829 ("On seeing the Sound Choice mark, a patron may believe that she is seeing and hearing content that was created by Slep-Tone. And she is.").

For the reasons explained at oral argument, the Court finds this analysis persuasive. Under *Dastar*, the relevant "goods" for purposes of the Lanham Act are the digital files embodying the karaoke tracks. *See* 15 U.S.C. § 1114 (imposing liability on

persons who use counterfeit marks in connection with the sale, distribution, or advertising of "goods"); 15 U.S.C. § 1125(a) (imposing liability for creating confusion with respect to "goods").  But Phoenix does not allege that its marks or trade dress appear on any hard drive or other tangible good; instead, the marks and trade dress are visible only as part of the creative content.  Phoenix likewise does not allege any facts that would plausibly suggest that the bar patrons and karaoke singers who view the creative content give even a moment's thought to the tangible medium on which the track is stored, much less that they are misled as to the origin of that tangible medium.  Presumably, the entire focus of the patrons and singers participating in a karaoke event is the creative content of the tracks and the performance of the singers.  Almost certainly, those same patrons and singers are utterly indifferent to whether the creative content is being played from a cassette tape, or an eight-track tape, or a compact disc, or a flash drive in a smart phone or tablet, or a hard drive on a laptop or desktop computer, or a remote server that is streaming tracks through a device at the venue.  *See Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d at 1250 (finding no plausible allegation of confusion because "[c]onsumers are not aware of the new, media-shifted digital files about which Plaintiff asserts confusion"); *Rumsey*, 829 F.3d at 829 (same).  Without any likelihood of confusion as to the origin, sponsorship, or approval of the

tangible medium on which the tracks are stored, Phoenix cannot state a Lanham Act claim with respect to a "good."

2. Karaoke Services

Phoenix next claims that the display of its marks and trade dress causes confusion concerning the origin, sponsorship, or approval of Star's and Brock's karaoke services. Specifically, Phoenix claims that bar patrons and karaoke singers who see its marks and trade dress displayed on the screen are likely to be misled into believing that Phoenix has sponsored or approved the karaoke services. Such a claim is not barred by *Dastar*, but Phoenix's allegations are nevertheless insufficient to clear the threshold of plausibility.

Phoenix does not allege that Star or Brock used Phoenix's marks or trade dress to advertise or market their karaoke services. Instead, the only alleged fact on which Phoenix could base a claim of confusion concerning the origin, sponsorship, or approval of the karaoke services is its allegation that, "[a]ccording to some estimates," more than half of the tracks played at karaoke shows in the United States originated from its recordings. Compl. ¶ 17.

It is theoretically possible that a display of Phoenix's marks and trade dress during a particular karaoke show could lead to confusion over the origin, sponsorship, or approval of the show itself. If, say, every single track played by Star or Brock at a

show displayed Phoenix's marks and trade dress—and if Star or Brock also used Phoenix's marks and trade dress in advertising the show—then it is conceivable that a patron could be misled into believing that Phoenix had something to do with the show. But Phoenix's single generalized allegation about the frequency with which its tracks are played at karaoke shows in the United States is insufficient to state a plausible claim against Star or Brock. To state such a claim, Phoenix would at a minimum have to allege the frequency with which its marks and trade dress are displayed at shows staged by Star and Brock. Without such allegations, Phoenix's claims of confusion concerning the karaoke services are too speculative. The Court therefore grants Star's and Brock's motion with respect to Phoenix's claims under the Lanham Act.[2]

### C. Rich and Fong

Phoenix alleges that Rich and Fong are vicariously and contributorily liable for Star's and Brock's Lanham Act violations. Because Phoenix has failed to allege plausible claims under the Lanham Act against Star and Brock, however, Phoenix cannot hold Rich and Fong secondarily liable for any Lanham Act violation. *See Boyte*, 2017 WL 1153969, at *4 ("There must be underlying direct infringement by someone

---

[2]The Court acknowledges that it permitted similar claims to proceed in another case. *See Phoenix Entm't Partners, LLC v. Lapadat*, 123 F. Supp. 3d 1114 (D. Minn. 2015). Having now had the benefit of the Seventh and Ninth Circuits' opinions in *Rumsey* and *Wired for Sound* and the opinions of a number of other district courts in Phoenix cases, the Court is persuaded that Phoenix has failed to plead plausible claims under the Lanham Act.

other than the secondarily liable defendant in order to hold that defendant liable on a contributory infringement theory."); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-5149, 2012 WL 4068632, at *2 n.2 (N.D. Cal. Sept. 14, 2012) ("In order for there to be secondary liability under the Lanham Act, there must be a direct violation."). The Court therefore grants Rich's and Fong's motions to dismiss as to Phoenix's Lanham Act claims.

### D. State Law Claims

Having disposed of all of Phoenix's federal claims, the Court declines to exercise supplemental jurisdiction over Phoenix's state-law claims.[3] *See Hervey v. Cty. of*

---

[3] In addition to alleging jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), Phoenix alleges jurisdiction over its common-law unfair-competition claims under 28 U.S.C. § 1338(b). Section 1338(b) provides that "[t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws." Notwithstanding § 1338(b)'s reference to "original" jurisdiction, courts appear to have discretion to decline to exercise § 1338(b) jurisdiction if all of the federal-question claims have been dismissed prior to trial. *Bankers Promotional Mktg. Grp., Inc. v. Orange*, No. 3-89-457, 1989 WL 222427, at *2 (D. Minn. Nov. 30, 1989) (declining to exercise § 1338(b) jurisdiction over an unfair-competition claim), *aff'd*, 926 F.2d 704 (8th Cir. 1991) (per curiam); *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1571 & n.14 (Fed. Cir. 1994) (district court properly declined to exercise jurisdiction under § 1338(b)); *Historical Truth Prods., Inc. v. Sony Pictures Entm't, Inc.*, No. 93-5529, 1995 WL 693189, at *14 (S.D.N.Y. Nov. 22, 1995) ("Because HTP's copyright claim has been dismissed, Section 1338 no longer confers jurisdiction over any of the remaining claims.").

The Court notes that, even if it did have original jurisdiction over Phoenix's state-law claims, the Court would dismiss those claims with prejudice for failure to plausibly
(continued...)

*Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008) (when federal claims are disposed of before trial, a court should normally decline to exercise supplemental jurisdiction over the remaining state-law claims). Those claims are therefore dismissed without prejudice.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motions to dismiss [ECF Nos. 25, 30, 37] are GRANTED.

2. Plaintiff's Lanham Act claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. The Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims. Accordingly, those claims are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 15, 2017         s/Patrick J. Schiltz
                               Patrick J. Schiltz
                               United States District Judge

---

[3](...continued)
plead a likelihood of confusion. *See LTJ Enters., Inc. v. Custom Mktg. Co.*, 168 F. Supp. 3d 1202, 1217 (D. Minn. 2016) (Minnesota Deceptive Trade Practices Act and common-law unfair competition claims require showing of likelihood of confusion).