UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, | Case No. 16-CV-4078 (PJS/FLN) |
| Plaintiff, | |
| v. | |
| STAR MUSIC, INC., a Minnesota corporation d/b/a Star Music & The Singing Express; TRACY BROCK, a Minnesota individual d/b/a Star Music; RICH MANAGEMENT, INC., a Minnesota corporation d/b/a Bogart's/Apple Place Bowl; and FONG'S, INC., a Minnesota corporation d/b/a David Fong's Restaurant, | ORDER |
| Defendants. | |

---

David R. Fairbairn, Jessica M.A. Thomas, and Andrew R. Swanson, KINNEY & LANGE, P.A., for plaintiff.

Jonathan L.A. Phillips, SHAY PHILLIPS, LTD., for defendants Star Music, Inc. and Tracy Brock.

Michael S. Sherrill, SHERRILL LAW OFFICES, PLLC, for defendants Rich Management, Inc. and Fong's, Inc.

Defendants Tracy Brock and Star Music, Inc. ("Star") stage karaoke events at bars and other venues, including venues operated by defendants Rich Management, Inc. ("Rich") and Fong's, Inc. ("Fong"). Plaintiff Phoenix Entertainment Partners, LLC ("Phoenix") produces and distributes karaoke accompaniment tracks under the "Sound

Choice" brand. Phoenix filed this action alleging claims of trademark infringement, unfair competition, and deceptive trade practices under federal and state law arising from Brock's and Star's alleged use of Sound Choice-branded karaoke tracks at venues operated by Rich and Fong.

Broadly speaking, Phoenix's claims can be grouped into two categories: (1) claims alleging that Brock's and Star's activities cause a likelihood of confusion as to the origin, sponsorship, or approval of *goods* (the goods being the digital karaoke files), and (2) claims alleging that Brock's and Star's activities cause a likelihood of confusion as to the origin, sponsorship, or approval of *services* (the services being the karaoke services provided by Brock and Star). Phoenix further alleged that Rich and Fong are vicariously and contributorily liable for Brock's and Star's actions.

The Court granted defendants' motions to dismiss Phoenix's complaint. ECF No. 53. With respect to the "goods" claims, the Court found that, as a matter of law, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) precludes Phoenix from establishing a likelihood of confusion as to the origin, sponsorship, or approval of the digital karaoke files. With respect to the "services" claims, the Court noted that, because these claims are not precluded by *Dastar*, it is theoretically possible for Phoenix to plead viable claims. But the Court held that Phoenix had failed to plausibly allege a likelihood of confusion as to the origin, sponsorship, or approval of the karaoke services

that Brock and Star provide. The Court therefore dismissed all of Phoenix's federal Lanham Act claims with prejudice and declined to exercise supplemental jurisdiction over Phoenix's state-law claims.

This matter is before the Court on Phoenix's motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) and for leave to amend its complaint under Fed. R. Civ. P. 15(a)(2). For the reasons that follow, the motion is denied.

I. MOTION TO AMEND COMPLAINT

In dismissing Phoenix's services claims, the Court noted that Phoenix did not allege that Brock or Star used Phoenix's marks or trade dress to advertise or market their karaoke services. ECF No. 53 at 8. Instead, Phoenix merely alleged that more than half of the tracks played at all of the karaoke shows in the United States originated from its recordings. *Id.* The Court found these allegations to be insufficient:

> It is theoretically possible that a display of Phoenix's marks and trade dress during a particular karaoke show could lead to confusion over the origin, sponsorship, or approval of the show itself. If, say, every single track played by Star or Brock at a show displayed Phoenix's marks and trade dress—and if Star or Brock also used Phoenix's marks and trade dress in advertising the show—then it is conceivable that a patron could be misled into believing that Phoenix had something to do with the show. But Phoenix's single generalized allegation about the frequency with which its tracks are played at karaoke shows in the United States is insufficient to state a plausible claim against Star or Brock. To state such a claim, Phoenix would at a minimum have to allege the frequency with which its marks and trade dress

> are displayed at shows staged by Star and Brock. Without such allegations, Phoenix's claims of confusion concerning the karaoke services are too speculative.

*Id.* at 8-9.

After the Court entered judgment, Phoenix essentially moved to reopen the case so that it can amend its complaint and add allegations concerning the frequency with which Phoenix's marks have been displayed at shows staged by Brock and Star.[1]

"[I]t is well-settled that plaintiffs 'remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60[b] and offer an amended complaint in place of the dismissed complaint.'" *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014) (quoting *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986)). Nevertheless, such motions are "disfavored." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). In particular, unexcused delay alone is a sufficient basis on which to deny a post-judgment motion for leave to amend. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 962 (8th Cir. 2015); *Mask of Ka-Nefer-Nefer*, 752 F.3d at 743-44; *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013).

---

[1]Phoenix repeatedly asserts that the Court held that such allegations are sufficient to plead a plausible claim. Phoenix is incorrect. The Court merely observed that such allegations would be *necessary* to plead a plausible claim. The Court did not say that such allegations would be *sufficient* to plead such a claim.

-4-

Phoenix argues that its delay in seeking to amend its complaint is excusable. Phoenix points to this Court's earlier opinion in a similar case in which the Court found that Phoenix's services claims were sufficiently pleaded. *See Phoenix Entm't Partners, LLC v. Lapadat*, 123 F. Supp. 3d 1114 (D. Minn. 2015). Phoenix argues that, because this Court had previously found similar allegations to be sufficient, Phoenix could not have anticipated that its services claims in this case were in danger of dismissal. Phoenix even goes so far as to suggest that the Court's dismissal of its services claims in this case constitutes "an intervening change in controlling law, a circumstance that customarily warrants post-judgment relief." *Hypoguard USA, Inc.*, 559 F.3d at 823.

These arguments are without merit. To begin with, this Court's decisions are not binding precedent; this Court is free to disregard its own earlier opinions if it later concludes that it was mistaken, as it sometimes does. *See, e.g.*, *United States v. Early*, No. 15-CR-1066 (PJS/FLN), 2017 WL 4621281, at *3 n.6 (D. Minn. Oct. 13, 2017); *Randall v. R.S.C. Equip. Rental*, No. 11-CV-2944 (PJS/LIB), 2012 WL 2060634, at *2 n.2 (D. Minn. June 7, 2012); *Regents of Univ. of Minn. v. AGA Med. Corp.*, No. 07-CV-4732 (PJS/LIB), 2011 WL 13943, at *3 (D. Minn. Jan. 4, 2011). The Court's dismissal of Phoenix's claims therefore does not qualify as an "intervening change in controlling law."

Setting that aside, Phoenix had ample warning that its services claims may not have been adequately pleaded. *Lapadat* was one of dozens of lawsuits brought by

Phoenix against "karaoke jockeys" such as Brock and Star and venues who hire them such as Rich and Fong. Most of those lawsuits resulted in settlements or default judgments, and thus at the time that the *Lapadat* order was entered, there were few judicial decisions—and no decision from a federal court of appeals—analyzing the merits of Phoenix's services claims. The dearth of case law is reflected in the fact that, in describing its reasons for allowing Phoenix's services claims to proceed, *Lapadat* did not cite anything but the familiar general standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A fair reading of *Lapadat* reveals that this Court found the question of whether Phoenix had pleaded plausible services claims to be very close:

> . . . Phoenix has alleged that Lapadat's use of the Sound Choice marks is likely to create consumer confusion—not because consumers will believe that Lapadat is affiliated with another local provider of karaoke services, but because consumers will believe that Lapadat is affiliated with *Phoenix*. It is true that this allegation is barely made in the complaint . . . .
>
> It is also true that this allegation is somewhat difficult to believe. It seems rather unlikely that, even if a karaoke singer or bar patron noticed the Sound Choice mark or trade dress in connection with some of the tracks played by Lapadat, that consumer would conclude that Lapadat was affiliated with Phoenix or had somehow been authorized by Phoenix to provide karaoke services. But to survive a motion to dismiss, Phoenix's allegations need only be plausible, not probable. . . .

123 F. Supp. 3d at 1121-22.

Phoenix could not have read this passage from *Lapadat* without realizing that, if it were to bring a similar lawsuit before this Court, Phoenix should strive to strengthen its "difficult to believe" claim that a patron of a karaoke event might be led to believe that the karaoke jockey was affiliated with Phoenix because the karaoke jockey played tracks that displayed the Sound Choice mark or trade dress. In particular, Phoenix should have realized that it was important to allege all of the facts in its possession that would support a claim about which this Court was clearly skeptical.

If that were not clear from the face of the *Lapadat* order, it should have been clear in light of the major developments in the case law that occurred after the *Lapadat* order was entered. In between the entry of this Court's order in *Lapadat* and the completion of the briefing on defendants' motions to dismiss in this case, two appellate courts affirmed the dismissal of similar cases brought by Phoenix. *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246 (9th Cir. 2017) (per curiam); *Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817 (7th Cir. 2016). In particular, the Seventh Circuit explicitly rejected an identical services claim. *Rumsey*, 829 F.3d at 830. *Rumsey* and *Wired for Sound* were mentioned over two dozen times in the memoranda filed by defendants in support of their motions to dismiss; the importance of those cases could not have been lost on Phoenix.

And even if the misgivings expressed by this Court in *Lapadat*—and the decisions of the Seventh and Ninth Circuits in *Rumsey* and *Wired for Sound*—were not enough to put Phoenix on notice that its services claims were in peril, this Court explicitly warned Phoenix at the oral argument on defendants' motions that it did not consider *Lapadat* to be the final word:

> So I've spent the last couple of days reading more on this. I know you were here when I had the *Lapadat* case, and I feel like I've done a lot more reading, and I've got more cases to read. We have Court of Appeals cases now, and we just have more material out there than when I did before. So, as far as I'm concerned, I'm writing on a blank slate here.

ECF No. 57 at 3.

To summarize: (1) Phoenix was informed on August 12, 2015—when the order in *Lapadat* was entered—that this Court deemed its services claims to be "difficult to believe" and barely plausible. (2) On July 21, 2016, Phoenix knew (or should have known) that its services claims had been weakened by the Seventh Circuit's issuance of its decision in *Rumsey*. (3) On January 18, 2017, Phoenix knew (or should have known) that its services claims had been further weakened by the Ninth Circuit's issuance of its decision in *Wired for Sound*. (4) Phoenix learned on January 25, 2017—after defendants filed their memoranda in support of their motions to dismiss—that defendants were making *Rumsey* and *Wired for Sound* the centerpiece of their argument for dismissal, something that Phoenix undoubtedly already knew after multiple "meet and confer"

sessions with defendants.  And (5) on April 14, 2017, Phoenix stood before the Court and heard the Court essentially confess that, in light of the intervening case law, it had doubts about its conclusion in *Lapadat* and was "writing on a blank slate here."

Despite multiple warnings that its services claims were on thin ice, Phoenix did not ask for a chance to amend its complaint to strengthen those claims,[2] nor did Phoenix so much as hint that it could plead additional facts to make those claims more plausible. Instead, Phoenix put defendants through the expense of drafting and arguing motions to dismiss and the Court through the trouble of preparing for and presiding over an oral argument.  And then Phoenix sat on its hands for four months while the Court drafted its order.  Only after the Court had issued its order, dismissed the complaint, and entered judgment did Phoenix say, in essence, "we would like to have a do-over, because we've got some facts that we've been sitting on for months, and we'd like to plead those facts in an amended complaint."

This is the exactly the type of unreasonable delay that provides sufficient grounds for denying a post-judgment motion for leave to amend.  *Ash*, 799 F.3d at 962; *Mask of Ka-Nefer-Nefer*, 752 F.3d at 743-44; *Horras*, 729 F.3d at 804.  Phoenix could have

---

[2]By contrast, Phoenix did indicate at oral argument that if the Court found its claims of contributory liability against Rich and Fong insufficient, it would like the opportunity to amend its complaint.  ECF No. 57 at 37.  The Court did not need to address the sufficiency of Phoenix's contributory-liability allegations, however, because it found no plausible claims of direct liability.

pleaded its additional facts in its original complaint; Phoenix could have sought leave to amend its complaint to plead those facts after conferring with defendants or in responding to defendants' motions to dismiss; and Phoenix could have sought leave to amend its complaint at oral argument or at any time during the four months between the conclusion of oral argument and the entry of judgment in this case. Instead, Phoenix—an experienced litigant who has brought dozens of similar lawsuits throughout the United States—made the strategic decision to stand on the allegations in its original complaint. Under these circumstances, justice does not require that Phoenix now be given a post-judgment opportunity to replead its services claims. *See* Fed. R. Civ. P. 15(a)(2); *Ash*, 799 F.3d at 963-64 (affirming denial of post-judgment motion to amend where defendants' motion to dismiss put plaintiffs on notice that their allegations were deficient, yet plaintiffs failed to seek leave to amend until after their claims were dismissed); *Mask of Ka-Nefer-Nefer*, 752 F.3d at 742 ("a district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one"); *Horras*, 729 F.3d at 805 (affirming denial of motion to amend because "[t]he record makes clear that Horras never sought to amend the complaint until after dismissal, despite being 'put on notice' of the need to amend by both the district court and ACS").

As noted, the Eighth Circuit has repeatedly held that unexcused delay is sufficient, in and of itself, to justify denial of a post-judgment motion to amend. At the same time, the Eighth Circuit seemed to suggest in *Mask of Ka-Nefer-Nefer* that a separate line of precedent could dictate a different result "where the amendment [is] needed to afford plaintiff an opportunity to test his claim on the merits." 752 F.3d at 744 (citation and quotations omitted). The three Eighth Circuit cases cited in *Mask of Ka-Nefer-Nefer* for this proposition are all easily distinguishable, however. Two of the three concern *pre*-judgment denials of leave to amend the complaint. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992 (8th Cir. 2001); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690 (8th Cir. 1981). As the Eighth Circuit has explained on multiple occasions, the standard for evaluating whether to grant leave to amend is stricter after a case has been dismissed. *Hypoguard*, 559 F.3d at 823-24; *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993).

In the third case, the district court sua sponte dismissed the complaint based on technical defects in the plaintiff's diversity allegations and then denied the plaintiff's post-dismissal motion for leave to amend to correct those defects. *Sanders v. Clemco Indus.*, 823 F.2d 214 (8th Cir. 1987). It is not surprising that, under the circumstances, the Eighth Circuit found that it was an abuse of discretion to deny the motion to amend. The plaintiff in *Sanders* apparently did not receive any type of warning—from his

opponents or from the court—about the potential defects, nor did he appear to have had any opportunity to correct those defects before his case was dismissed. Here, by contrast, Phoenix received warning after warning that its services claims were in peril, and opportunity after opportunity to strengthen those claims.

For these reasons, Phoenix's motion for leave to file an amended complaint is denied.

## II. MOTION TO ALTER OR AMEND THE JUDGMENT

Phoenix also moves to alter or amend the judgment under Rule 59(e), arguing that the Court should have dismissed its claims without prejudice. It appears that Phoenix makes this argument primarily in conjunction with its argument that it should be permitted to file an amended complaint. To the extent that Phoenix is contending that the Court should alter its judgment so that Phoenix's federal claims are dismissed without prejudice regardless of whether Phoenix is permitted to amend its complaint, the Court rejects the argument.

Phoenix contends that, generally speaking, a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be without prejudice absent evidence of persistent pleading failures. In support of its argument, Phoenix cites *Michaelis v. Nebraska State Bar Association*, which states that "[o]rdinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend." 717 F.2d 437, 438-39 (8th

Cir. 1983). Phoenix argues that because the Court dismissed Phoenix's services claims for failure to meet the plausibility standard of *Iqbal* and *Twombly*, and because that standard derives from Rule 8, the Court erred in dismissing its claim with prejudice.

But Phoenix takes the language of *Michaelis* out of context. *Michaelis* was not addressing a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6); instead, it concerned dismissal of two overly prolix, repetitious, and confusing complaints for violating Rule 8's "short and plain statement" requirement. *Michaelis*, 717 F.2d at 438-39. Nothing requires that a Rule 12(b)(6) dismissal for failure to state a claim be without prejudice; to the contrary, Rule 12(b)(6) dismissals are commonly with prejudice. *See, e.g.*, *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956 (8th Cir. 2014) (affirming Rule 12(b)(6) dismissal with prejudice of original complaint); *Ulrich v. Pope Cty.*, 715 F.3d 1054 (8th Cir. 2013) (same); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909 (8th Cir. 2002) (same); *see also* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citation and quotations omitted). Phoenix

has not presented any newly discovered evidence, and the Court did not commit a "manifest error" in dismissing Phoenix's claims with prejudice. Phoenix's motion to amend the judgment is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion to alter or amend the judgment and to amend its complaint [ECF No. 61] is DENIED.

Dated: November 28, 2017

 s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge